IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:14-CV-211-D

| | | |
|---|---|---|
| RANSOM SHUDELL COPPAGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Ransom Shudell Coppage ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that he is not disabled.[1] The case is before the court, in part, on the parties' respective motions for judgment on the pleadings. (D.E. 18, 23). Each party filed a memorandum in support of its motion. (D.E. 19, 24). The case is also before the court on a separate motion by plaintiff to remand the case. (D.E. 26). Plaintiff filed a supporting memorandum and the Commissioner a response. (D.E. 27, 28). All the motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 25, 29). For the reasons set forth below, it will be recommended that the Commissioner's motion for judgment on the pleadings be allowed, plaintiff's motion for judgment on the pleadings be

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

denied, plaintiff's motion to remand be denied, and the Commissioner's final decision be affirmed.

## I.     BACKGROUND

### A.     Case History

Plaintiff filed applications for DIB and SSI on 13 January 2009, alleging a disability onset date of 13 June 2007. Transcript of Proceedings ("Tr.") 162. The applications were denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 162. On 16 September 2010, a hearing was held before an administrative law judge ("ALJ"), Lisa R. Hall, at which plaintiff (appearing pro se), his wife, and a vocational expert ("VE") testified. Tr. 162, 88-121. The ALJ issued a decision denying plaintiff's claim on 12 April 2011 ("2011 decision"). Tr. 162-70. On 20 March 2012, the Appeals Council issued an order granting review, vacating the 2011 decision, and remanding the case for a new hearing. Tr. 175-77. The Appeals Council instructed the ALJ on remand to obtain additional evidence regarding plaintiff's impairments, further evaluate his mental impairments, consider his obesity, and, if warranted, obtain supplemental evidence from a VE. Tr. 176-77.

The hearing on remand was held on 23 April 2013 before a different ALJ from the one who issued the 2011 decision. Tr. 24, 45-87. Plaintiff (represented by counsel), his wife, and a VE testified at the hearing. *See* Tr. 45-87. The ALJ issued a decision denying plaintiff's claim on 26 June 2013. Tr. 24-39. Plaintiff timely requested review by the Appeals Council. Tr. 19-20. On 19 September 2014, the Appeals Council admitted additional evidence into the record (Tr. 774-98),[2] but denied plaintiff's request for review. Tr. 1-7. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff

---

[2] The Appeals Council also reviewed medical records concerning tooth extractions plaintiff had after the date of the ALJ's decision (Tr. 8-18), but determined that they were not material. *See* Tr. 2.

commenced this proceeding for judicial review on 6 November 2014, pursuant to 42 U.S.C. §§ 405(g) (DIB) and 1383(c)(3) (SSI).  (*See* Compl. (D.E. 1)).

**B.     Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B).  The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings ["Listings"] in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

C.     **ALJ's Findings**

Plaintiff was 54 years old on the alleged onset date of disability and 60 years old on the date of the hearing at issue (on 23 June 2013). *See* Tr. 38 ¶ 6; 48. Plaintiff has at least a high school education. Tr. 38 ¶ 6. Plaintiff has past relevant work as a material handler, tractor trailer truck driver, and inventory control clerk. Tr. 38 ¶ 6.

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had engaged in substantial gainful activity in calendar year

4

2007, but not thereafter. Tr. 26-27 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairment that was severe within the meaning of the Regulations: seizure disorder. Tr. 27 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 34 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a full range of work at all exertional levels "but with the following non-exertional limitation as seizure precautions: he should never climb ladders; should avoid concentrated exposure to unprotected heights; and should avoid all driving." Tr. 34 ¶ 5. At step four, the ALJ found that plaintiff was able to perform his past relevant work as an inventory control clerk as actually and generally performed. Tr. 37 ¶ 6. The ALJ thereby determined that plaintiff was not disabled from the alleged disability onset date, 13 June 2007, through the date of her decision, 26 June 2013. *See* Tr. 39 ¶ 7.

Alternatively, at step five, the ALJ accepted the testimony of the VE and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of linen room attendant, marker, and surveillance system monitor. Tr. 38-39 ¶ 6. The ALJ therefore concluded that plaintiff was not disabled during the foregoing period on this alternative ground. *See* Tr. 39 ¶ 7.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456

(4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.*

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2 (holding that Commissioner's decision implicitly determining claimant not to have a severe mental impairment and failing to consider the effect of any such impairment on his ability to work was not supported by substantial evidence in light of additional evidence of claimant's depression admitted by Appeals Council, and remanding case to Commissioner for further proceedings).

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir.

1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III.    OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ's decision should be reversed and benefits awarded or, alternatively, that the case should be remanded for a new hearing on the grounds that the ALJ improperly evaluated the credibility of plaintiff's wife, the medical opinion evidence, application of the Listings to plaintiff's impairments, the 2011 decision, a disability determination by the Department of Veterans Affairs ("VA"), and plaintiff's RFC, and that she relied on an improper hypothetical to the VE. As noted, plaintiff also moved separately for remand. The court will address in turn each of the bases for relief asserted by plaintiff.

## IV.    ALJ'S EVALUATION OF PLAINTIFF'S WIFE'S CREDIBILITY

The Regulations require an ALJ, in assessing a claimant's RFC, to consider descriptions and observations of the claimant's limitations from his "family, neighbors, friends, or other persons." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The ALJ must take into account the extent to which such descriptions and observations "can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* §§ 404.1529(c)(3), 416.929(c)(3).

At the instant, 2013 hearing, plaintiff's wife, Delois Coppage,[3] testified to the effect that plaintiff's limitations were disabling. *See* Tr. 73-82. The ALJ gave her testimony "little weight." Tr. 31 ¶ 3. Plaintiff argues that the ALJ erred in doing so. The court finds no error.

The ALJ explained at length the reasons for her attribution of limited weight to Mrs. Coppage's testimony:

> [Plaintiff's] wife, Delois[] Coppage, testified that the claimant hears and sees things, that he's in a "confused state pretty often", and that they only go to the flea market twice a month (which is contradicted by the claimant's sworn testimony of going 3 times per week for 4-5 hours at a time). She testified that the claimant doesn't go to church much, "maybe twice this year" (again, contradicted by the claimant's sworn testimony that they go to prayer meetings on Wednesday nights with 15-25 other people there; that he's an usher in the church, has been asked to be a Deacon, and that he and his wife go to church in [Chocowinity] to sell the bras she markets). She denied that the claimant attends prayer meetings on Wednesday nights (contradicted by the claimant's sworn testimony). Mrs. Coppage also alleged that she does "99% of the driving", that the claimant has crying spells, and that he has problems with his memory.
>
> I give little weight to the testimony from the claimant's wife, Mrs. Coppage. The symptoms and limitations she described are significantly out of proportion to the objective evidence and frequently contradicted by the claimant's own statements in testimony [and] medical records.
>
> I give greater weight to her earlier opinions in a third party report at Exh. 4E that was completed in January 2009. However, less weight is afforded to Mrs. Coppage's opinions and statements in letters at Exh. 8E and 16E that were contradicted by her sworn testimony at the prior hearing with Judge Hall and are which are inconsistent with the objective records.
>
> For example, Mrs. Coppage described in her earlier third party report from January 2009 that the claimant mows the lawn for 3 hours every 2 weeks in the summer; goes shopping for groceries and clothes about twice a week for 30 minutes to an hour each [time]; talks on the phone; listens to music; drives a car; can go out alone; can pay bills and handle a savings account; that his hobbies include using a computer and playing with his grandchildren; that he attends church regularly; that he could lift 50 pounds (Exh. 4E). Clearly, the assessment of cognitive disorder by Dr. Burgess the following month in February 2009 (Exh. 7F) is wholly contradicted by the wife's statements in that report.

---

[3] Although the ALJ used an "e" at the end of Mrs. Coppage's first name, that appears to have been erroneous. *See*, *e.g.*, Tr. 354 (printed name of Mrs. Coppage on a form which the form indicates she completed).

Also, Judge Hall told us in her unfavorable decision that Mrs. Coppage previously testified that she had only [seen] three "sleepy seizures" in 5 years (Exh. 7A). Judge Hall noted this was inconsistent with the wife's statement in the letter at Exh. 8E that she had "witnessed him having seizure after seizure" (Id). I agree. Judge Hall noted that Mrs. Coppage had been out of work and was currently looking for a job, so she had some financial interest in seeing that her husband was awarded disability benefits (Exh. 7A). I also note that the wife reported in neurology treatment records at Exh. 5F that her husband (then 55 years of age) had only experienced 12-13 seizures over the entire span of his life. That would make her prior sworn testimony manifestly untrue. Given Mrs. Coppage's tendency to misrepresent facts under oath in the past and the discrepancy between the severity of limitations she alleges at the present hearing when compared to the objective evidence, I give little weight to her current testimony.

Tr. 30-31 ¶ 3.

Plaintiff contends that the ALJ erred by discounting Mrs. Coppage's testimony on the basis of its inconsistency with plaintiff's testimony. He states that such reliance was erroneous because Mrs. Coppage informed the ALJ in her testimony that plaintiff paints a different picture of events than what actually happened. Tr. 78. Plaintiff's contention is obviously circular. In effect, he argues that the ALJ erred in not believing his wife as a result of the failure to believe his wife. The court finds that the ALJ could properly rely on the inconsistency of Mrs. Coppage's testimony with that of plaintiff in not fully crediting her testimony.

Plaintiff also argues that the ALJ's reliance on Mrs. Coppage's 27 January 2009 third-party report (Tr. 347-54) was improper because "it was completed years before he is alleging disability as the result of mental impairments" and years before her testimony at the initial ALJ hearing in September 2010. (Pl.'s Mem. 21). But plaintiff *is* alleging that his mental impairments rendered him disabled back to not only 2009, but to the alleged onset of disability in June 2007. For example, he specifically faults the ALJ for not giving greater weight to a psychological evaluation of him by consulting examining licensed psychological associate Deanna Jamison, M.A., which was co-signed by licensed psychologist E.J. Burgess, Psy.D.,

performed on 17 February 2009, less than a month after the third-party report. (*See id.* at 20, 23). Further, plaintiff does not limit to any specific time period his contention that he satisfies Listings 12.04 and 12.06, both dealing with mental impairments, clearly signifying that he contends he satisfied them as of the alleged onset of disability on 13 June 2007. (*See id.* at 13-16). Numerous other examples could be provided for this manifestly baseless contention.

Plaintiff also challenges the ALJ's reliance on Mrs. Coppage's 2009 report on the grounds that it precedes plaintiff's seeking out treatment for his mental impairments. The ALJ properly noted, though, that "there was no attempt [by plaintiff] to seek out any mental health treatment until *after* ALJ Hall issued her unfavorable decision in April 2011." Tr. 27 ¶ 5 (emphasis original). This further contention by plaintiff therefore also fails.

Plaintiff has not otherwise shown that the ALJ's assessment of the credibility of Mrs. Coppage's testimony was improper. The court accordingly rejects plaintiff's challenge to it.

## V.    ALJ'S EVALUATION OF MEDICAL OPINION EVIDENCE

Plaintiff contends that the ALJ improperly evaluated the opinions of treating psychiatrist Edwin W. Hoeper, M.D.; consulting examining psychologist Lonnie L. Sansbury, Ph.D.; Ms. Jamison and Dr. Burgess, as indicated; and the global assessment of functioning ("GAF") scores given him by various providers. The court finds no error.

### A.    Applicable Legal Standards

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must consider all medical opinions in a

case in determining whether a claimant is disabled. *See id.* §§ 404.1527(b), 416.927(b); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, and their consistency with the record. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the opinion of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The same basic standards that govern evaluation of the opinions of treating medical sources not given controlling weight and explanation of the weight given such opinions apply to the evaluation of opinions of examining, but nontreating sources, and nonexamining sources. *See* 20 C.F.R. §§ 404.1527(c), (e); 416.927(c), (e); *Casey v. Colvin,* No. 4:14–cv–00004, 2015 WL 1810173, at *3 (W.D. Va. 12 Mar. 2015), *rep. & recomm. adopted by* 2015 WL 1810173, at *1 (21 Apr. 2015); *Napier v. Astrue*, No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013). More weight is generally given to the opinions of a treating source than to the opinions of a nontreating examining source and to the opinions of an examining source than the opinions of a nonexamining source. *See* 20 C.F.R. §§ 404.1527(c)(1), (2); 416.927(c)(1), (2). Under appropriate circumstances, however, the opinions of a nontreating examining source or a nonexamining source may be given more weight than those of a treating source. *See*, *e.g.*, Soc. Sec. Ruling 96–6p, 1996 WL 374180, at *3 (2 July 1996).

The factors used to determine the weight to be accorded the opinions of physicians and psychologists and other "acceptable medical sources" not given controlling weight also apply to the opinions of providers who are deemed to be at a different professional level (or so-called "other sources"). *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2, 4 (9 Aug. 2006); *see also* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (partial listing of "other sources"). As with opinions from physicians and psychologists, the ALJ must explain the weight given opinions of other sources and the reasons for the weight given. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6; *Napier*, 2013 WL 1856469, at *2. The fact that an opinion is from an acceptable medical source may justify giving that opinion greater weight than an opinion from a source that is not an acceptable medical source, although circumstances can justify giving opinions of

sources that are not acceptable sources greater weight. Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *5.

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3.

### B.    Opinions of Dr. Hoeper

The record contains notes on two office visits by plaintiff with Dr. Hoeper, on 23 June and 15 September 2011. Tr. 692-95. There is also a letter setting out his evaluation based on the 23 June 2011 examination.[4] Tr. 689-90. Dr. Hoeper also completed a psychiatric review technique form dated 12 April 2012, covering the period 23 June 2011 to 6 March 2012. Tr. 696-708. The ALJ reviewed the opinions expressed by Dr. Hoeper and gave them "little to no weight." Tr. 32 ¶ 3. She explained at length her analysis of his opinions as follows:

> Treating source Dr. Edwin Hoeper performed a psychiatric examination of the claimant in June 2011 (Exh. 16F). I give little to no weight to his conclusions and opinions, for they are wholly inconsistent with the objective evidence of record. During the evaluation, the claimant contended he had nightmares and daily flashbacks about trauma from prior military service. He complained of intrusive thoughts, being hypervigilant, and socially withdrawn. He also felt depressed and complained of severe memory loss. Dr. Hoeper diagnosed the claimant with chronic PTSD and major depression. He opined that the claimant was "severely compromised in his ability to sustain social relationships and [ . . .] work relationships" (Id). In March 2012, Dr. Hoeper completed a Psychiatric Review Technique form indicating that the claimant's PTSD met the Listing for 12.06 with "extreme" limitations in social functioning; "extreme" limitations in concentration, persistence, or pace; 4 or more more episodes of decompensation; and a "complete inability to function independently outside of one's home" (Ex. 17F).

---

[4] The letter is dated 14 June 2011, but states that it is based on a psychiatric examination on 23 July 2011. There are no notes on such a visit. The ALJ appears to have determined that the letter is based on the 23 June 2011 examination. *See* Tr. 32 ¶ 3.

These opinions from Exhibits 16F and 17F from Dr. Hoeper are worthy of little to no weight. They are blatantly contradicted by the evidence of record which has been described in copious detail in the previous pages of this decision. Here are just some of the examples of facts that contradict Dr. Hoeper's opinions:

- The claimant never sought out any mental health treatment until after Judge Hall issued her prior unfavorable decision in April 2011 (which found his depression to be nonsevere).

- The claimant's testimony at the prior hearing that he visited relatives and friends on an ongoing basis, enjoyed listening to gospel music, and he liked to support his wife's ministry as an evangelist. On a typical day he described mowing grass, taking out the trash, cleaning the car and van, and doing any household chores that his wife tells him to do. He was taking online college courses, maintains his CDL [*i.e.*, commercial driver's license] . . . , manages the family finances, and enjoys writing, cooking and walking (Exh. 7A).

- The claimant renewed his CDL only 3 months before the present hearing (Exh. 22F).

- The claimant's statements from October 2012 - after both of the opinions from Dr. Hoeper were offered wherein he reported, **"I've been great"**; "credited his religious faith and supportive wife with his doing so well. **He spends his time helping his wife with her flea market sales several days each week.** She specializes in selling bras for larger sized women and has quite a clientele, per vet . . . **Vet and his wife continue to stay busy with flea markets, church, and helping with grandchildren"** (Exh. 19F)

- The claimant's testimony that he helps his wife out with her flea market business for 3 days a week and 4-5 hours each time.

- The claimant's testimony that he serves as an usher in church, has been asked to be a Deacon, and has sung in the choir. Furthermore, that he attends prayer meetings on Wednesday nights and 15-25 people are there.

- The claimant's testimony that he goes to church in [Chocowinity] to sell the bras that his wife markets. As the claimant told us, "That's another reason why I'd like to keep my CDL [active], because you never know when we might need a vehicle for her to transport large amounts of bras".

Tr. 32 ¶ 3 (bolding and underlining original).

Plaintiff contends that the ALJ's analysis is erroneous because it relies primarily on

inconsistencies relating to plaintiff's testimony and his testimony "is understandably inconsistent

at points as a result of his confusion and memory loss." (Pl.'s Mem. 20). As noted previously, though, the ALJ did not err in rejecting Mrs. Coppage's testimony that plaintiff describes events differently than they actually occurred. Substantial evidence otherwise supports the ALJ's findings based on inconsistencies relating to plaintiff's testimony. Moreover, the ALJ stated expressly that her rejection of Dr. Hoeper's opinions rested not only on the inconsistencies relating to plaintiff's testimony and the other points she listed, but her discussion of additional evidence of record contradicting the opinions. Much of this additional evidence is addressed elswhere herein.

Plaintiff also complains that the ALJ relies on plaintiff's lack of mental health treatment allegedly prior to his development of mental impairments. The court has already addressed in the context of Mrs. Coppage's credibilty the baselessness of this contention.

Plaintiff further argues that his maintenance of a CDL is irrelevant because he purportedly has not used it for an extended period. But the inference can reasonably be drawn from plaintiff's maintenance of his CDL that he views himself as able to safely operate a commercial motor vehicle and made representations to the Division of Motor Vehicles to that effect. The same inference regarding his perception of his ability to drive safely can be drawn from his stated intention to use the CDL to haul his wife's merchandise, if necessary. The ALJ's reliance on plaintiff's maintenance of his CDL was proper.

Plaintiff contends that Dr. Hoeper's status as a treating source entitles his opinions to greater weight. The ALJ clearly considered Dr. Hoeper's status in her evaluation. She expressly identified him as a "[t]reating source." Tr. 32 ¶ 3. As explained previously, while such status can merit giving a source's opinions greater weight, it does not necessarily do so. *See* Soc. Sec. Ruling 96–6p, 1996 WL 374180, at *3. The ALJ did not err in discounting Dr. Hoeper's status

as a treating source based on the evidence she addresses. The fact that, as documented in the record, Dr. Hoper's treatment relationship with plaintiff was a limited one—two visits over a period of less than nine months—reinforces the propriety of the ALJ's determination.

The court finds that the ALJ's assessment of the opinions of Dr. Hoeper is otherwise proper. It accordingly rejects plaintiff's challenge to the assessment.

### C.     Opinions of Dr. Sansbury

On 12 April 2012, Dr. Sansbury completed a mental disorders disability benefits questionnaire. Tr. 712-17 (signed copy); 718-23 (unsigned copy). The ALJ gave Dr. Sansbury's opinions little weight. Tr. 33 ¶ 3. She stated:

> In April 2012, Lonnie Sansbury completed a Disability Benefits Questionnaire advising that the claimant had anxiety disorder and a cognitive disorder due to memory loss and times of disorientation. [Dr.] Sansbury opined that the claimant had total occupational and social impairment because of his seizures disorder, memory loss, and anxiety. [Dr.] Sansbury discussed the claimant's subjective reports but did not make any clinical findings. Additionally, he noted that the claimant had seen good response to psychotherapy and medications from other providers (Ex. 18F). I give little weight to these opinions, finding they are contradicted by the objective evidence of record described in detail in this decision (some examples are on the prior page [in the evauation of Dr. Hoeper's opinions]). Furthermore, the opinions are contradicted by treatment records from June 2012 where he exhibited a calm mood and a bright affect with no hallucinations or delusions; intact cognition and he exhibited good judgment. It's also contradicted by the claimant's own assessment of his conditions in October 2012 ("I feel great") and his description of the various activities that were keeping him busy (See 19F).

Tr. 33 ¶ 3.

Plaintiff contends that the ALJ erred by not giving more weight to Dr. Sansbury's opinions. He failed, though, to identify specific flaws in the ALJ's analysis. The court finds that the evidence cited by the ALJ constitutes substantial evidence supporting her assessment of Dr. Sansbury's opinions and that the assessment is otherwise proper. The court accordingly rejects plaintiff's challenge to the assessment.

### D. Opinions of Ms. Jamison and Dr. Burgess

As noted, Ms. Jamison conducted a consultative psychological evaluation of plaintiff on 17 February 2009, which Dr. Burgess co-signed. The ALJ gave little, if any, weight to the opinions in the evaluation, explaining as follows:

> Dr. Burgess, a consultative psychologist who evaluated the claimant one time in February 2009, assessed the claimant with cognitive disorder (Exh. 7F). With due respect to Dr. Burgess, I wholly disagree. This assessment and Dr. Burgess' opinion about a decline in the claimant's memory skills was not consistent with his exam findings, with the claimant's description of activities of daily living at the hearing with Judge Hall 1.5 years later in September 2010, or with the wife's description of the claimant's activities of daily living in the third party report that she completed in January 2009 (Exh. 7A).
>
> The claimant's wife, Mrs. Coppage, tells us in a third party report dated January 2009 that the claimant: mows the lawn for 3 hours every 2 weeks in the summer; goes shopping for groceries and clothes about twice a week for 30 minutes to an hour each [time]; talks on the phone; listens to music; drives a car; can go out alone; can pay bills and handle a savings account; that his hobbies include using a computer and playing with his grandchildren; that he attends church regularly; that he could lift 50 pounds (Exh. 4E). Clearly, the assessment of cognitive disorder by Dr. Burgess the following month in February 2009 is wholly contradicted by the wife's statements in that report.
>
> Although Dr. [Burgess], the consultative psychologist, noted that the claimant's score on the WMS-III [*i.e.*, Wechsler Memory Scale-Third Edition] showed he had some difficulty with memory tasks, this is not consistent with other findings during the same evaluation (not to mention the wide ranging activities of daily living that we learn from the wife's report completed the month prior, Exh. 4E). Specifically, let's look at the following facts. Dr. Burgess noted that the claimant's attention span was adequate. His thought processes were logical. The claimant reported his favorite activity was to write. The claimant reported he performs activities around the house. He drives a vehicle. He helps his wife clean up around the house. He had a pleasant and appropriate mood during the evaluation not consistent with depression. On testing, the claimant could recall 5/5 objects and 3/5 after 5 minutes. He could report what he ate for breakfast that morning as well as what he ate for dinner last night. The claimant was able to correctly name his high school and name 3 large cities. He correctly named 2 current events in the news, correctly named 3 different presidents, was able to perform addition/subtraction and multiplication, and could interpret a proverb correctly (Exh. 7F).

This is wholly inconsistent with a cognitive disorder. Accordingly, I give little to no weight to the opinions of Dr. Burgess that the claimant appeared to have some decline in his memory skills and some cognitive problems as a result of memory impairment, that his ability to sustain attention to perform simple, routine tasks is likely impaired due to problems with delayed memory, and that the claimant would have difficulty tolerating the stress and pressures of day to day work activity (Id).

I point out that 3 years after this assessment of cognitive disorder, the claimant presented me with a current valid **Commercial Drivers License that was recently issued on January 7, 2013 (Exh. 22F). Remember though, he alleges disability based on a seizure condition.**

Tr. 28-29 ¶ 3 (bolding and underlining original).

The ALJ added:

During his psychological consultative examination, the claimant complained of social withdrawal. However, following the mental status exam, [Dr. Burgess] opined that he could adequately relate to co-workers and supervisors (Ex. 7F).
            . . . .
During the psychological consultative examination, the claimant complained of difficulty concentrating. Yet, [Dr. Burgess] noted that his attention span was adequate and he could recall 5/5 objects immediately and 3/5 after five minutes (Ex. 7F).

Tr. 33-34 ¶ 3.

Plaintiff argues that the ALJ should have given more weight to the opinions of Ms. Jamison and Dr. Burgess, but does not explain specificially why. The court finds the ALJ's assessment supported by substantial evidence, including the evidence she discusses, and based on proper legal standards. Plaintiff's challenge to it is meritless.

E.      GAF Scores

Plaintiff argues that the ALJ erred by "failing to specifically address the significance of plaintiff's [GAF] scores throughout the record." (Pl.'s Mem. 22). The court finds no harmful error.

The GAF scale measures a person's overall psychological, social, and occupational functioning. Am. Psych. Assn., *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000) ("DSM–IV–TR").[5] The GAF scale is "intended to be used to make treatment decisions" and has "no direct legal or medical correlation to the severity requirements of social security regulations." *Powell v. Astrue*, 927 F. Supp. 2d 267, 273 (W.D.N.C. 2013). Nonetheless, it may inform the ALJ's judgment as to whether a claimant is disabled. *Kozel v. Astrue*, No. JKS-10-2180, 2012 WL 2951554, at *10 (D. Md. 18 July 2012). Notably, the current, fifth edition of the DSM, which was issued on 13 May 2013 prior to the 26 June 2013

---

[5] Selected GAF scores have the following meanings:

90-81 Absent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members).

80-71 If symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork).

70-61 Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.

60-51 Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

50-41 Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

40-31 Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

30-21 Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends).

DSM–IV–TR 34.

issuance of the ALJ's decision, abandoned use of the GAF scale because of "its lack of

conceptual clarity . . . and questionable psychometrics in routine practice." Am. Psych. Assn.,

DSM-V 16 (2013). Nonetheless, in internal guidance messages postdating the ALJ's decision,

the Social Security Administration ("SSA") instructed that ALJs were to continue to treat GAF

scores as opinion evidence that must be considered. *See* SSA, AM-13066, "Global Assessment

of Functioning (GAF) Evidence in Disability Adjudication" (effective 22 July 2013); SSA, AM-

13066 REV, "Global Assessment of Functioning (GAF) Evidence in Disability Adjudication –

REV" ("AM-13066-REV") (effective 14 Oct. 2014).[6]

Here, there appear to be only three GAF scores in the record. Ms. Jamison and Dr.

Burgess gave plaintiff a GAF score of 60 on 17 February 2009 (Tr. 494); Dr. Hoeper gave him a

GAF score of 35 on 23 June 2011 (Tr. 689, 695); and Dr. Sansbury gave him a GAF score of 40

on 12 April 2012 (Tr. 713). The ALJ did not expressly reference any of these scores. Plaintiff

does not complain specifically about the ALJ's failure to mention the GAF score from Ms.

---

[6] AM-13066-REV provides in part:

> For purposes of the Social Security disability programs, when it comes from an acceptable
> medical source, a GAF rating is a medical opinion as defined in 20 CFR §§ 404.1527(a)(2) and
> 416.927(a)(2). An adjudicator considers a GAF rating with all of the relevant evidence in the case
> file and weighs a GAF rating as required by §§ 20 CFR 404.1527(c), 416.927(c), and f, SSR 06-
> 030, while keeping the following in mind:
>
> GAF ratings are opinion evidence and need supporting evidence to give them weight. By itself,
> the GAF rating cannot be used to "raise" or "lower" someone's level of function. A GAF rating is
> only a snapshot opinion about the level of functioning. It is one opinion that we consider with all
> the evidence about a person's functioning. Unless the clinician clearly explains the reasons behind
> his or her GAF rating, and the period to which the rating applies, it does not provide a reliable
> longitudinal picture of the claimant's mental functioning for a disability analysis.
>
> Unless the GAF rating is well supported and consistent with other evidence in the file, it is entitled
> to little weight under our rules. A GAF rating is usually an estimate of the best level of
> functioning over the last week or so, or over the entirety of the past year. It rarely overrides a
> more specific longitudinal picture. Because of its drawbacks, you should not rely on GAF
> evidence as the primary support for findings of impairment severity or of mental limitations.
>
> A GAF rating alone is never dispositive of impairment severity.

AM-13066-REV.

Jamison and Dr. Burgess, possibly because the GAF score of 60 equates to only moderate symptoms. He does, though, object to the ALJ's omission of any discussion of the other two GAF scores.

It is questionable whether the omission was an error at all because the ALJ discussed the substance of the scores given by Dr. Hoeper and Dr. Sansbury in her assessment of their opinions. As previously discussed, the ALJ assessed Dr. Hoeper's opinion "that the claimant was 'severely compromised in his ability to sustain social relationships and [ . . .] work relationships.'" Tr. 32 ¶ 3. In the case of Dr. Sansbury, the ALJ evaluated his opinion "that the claimant had total occupational and social impairment." Tr. 33 ¶ 3.[7]

Even if the omission of any discussion of the GAF scores were deemed erroneous, the error was harmless. Plaintiff has made no showing that explicit reference to the scores would have changed the outcome of the ALJ's decision. *See Garner v. Astrue*, 436 Fed. Appx. 224, 226 n.* (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)); *Huffman v. Colvin*, No. 1:10CV537, 2013 WL 4431964, at *4 & n.7, *7 (M.D.N.C. 14 Aug. 2013). The court accordingly rejects plaintiff's challenge to the ALJ's handling of the GAF scores in the record.[8]

## VI.  ALJ'S LISTING DETERMINATION

Plaintiff argues that the ALJ erred by not finding that he satisfies Listings 12.04 and 12.06. The argument has no merit.

---

[7] The ALJ also evaluated the substance of the GAF rating from Ms. Jamison and Dr. Burgess in her discussion of their opinions. *See* Tr. 28-29 ¶ 3.

[8] The court's conclusion would be the same if the ALJ's handling of the GAF scores was considered under AM-13066 or AM-13066-REV.

### A. Listing Requirements

The Listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. §§ 404.1525(a), 416.925(a). Therefore, if a claimant's impairments meet a listing, that fact alone establishes that the claimant is disabled. *Id*. §§ 404.1520(d), 416.920(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); Soc. Sec. Ruling 83-19, 1983 WL 31248, at *2 (1983). The burden of demonstrating that an impairment meets a listing rests on the claimant. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

Even if an impairment does not meet the listing criteria, it can still be deemed to satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. §§ 404.1526(a), 416.926(a) (medical findings must be at least equal in severity and duration to the listed criteria). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531.

"[W]hen an ALJ finds that a claimant has a severe impairment and the record contains evidence of related 'symptoms [that] appear to correspond to some or all of the requirements of [a listing, the ALJ must] . . . explain the reasons for the determination that [the claimant's severe impairment] did not meet or equal a listed impairment.'" *Jones ex rel. B.J. v. Astrue*, No. 1:09CV45, 2012 WL 1267875, at *2 (M.D.N.C. 16 Apr. 2012) (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)), *rep. & recomm. adopted by* Order (22 May 2012) (D.E. 19);

*Money v. Astrue*, No. 1:08cv895, 2011 WL 3841972, at *8 (M.D.N.C. 26 Aug. 2011) ("The ALJ also may not include a conclusory statement that the claimant does not have an impairment or combination of impairments that meets a listed impairment." (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989))); *cf. Kelly v. Astrue*, No. 5:08-CV-289-FL, 2009 WL 1346241, at *5 (E.D.N.C. 12 May 2009) ("[T]he ALJ is only required to explicitly identify and discuss relevant listings of impairments where there is 'ample evidence in the record to support a determination' that an impairment meets or medically equals a listing." (citations omitted)).

### B.  Listings 12.04 and 12.06

Listing 12.04 relates to affective disorders.  The paragraph A criteria require medically documented persistence of depressive syndrome, manic syndrome, or bipolar syndrome, each meeting various requirements.  Listing 12.04A.  The paragraph B criteria require that the claimant's mental impairments at issue result in at least two of the following:  marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  Listing 12.04B.  The paragraph C criteria require a medically documented history of a chronic affective disorder of at least two years' duration, again meeting various requirements.  Listing 12.04C.  Listing 12.04 is met or equaled by satisfying the paragraph A and B criteria, or the paragraph C criteria.  Listing 12.04.

Listing 12.06 relates to anxiety-related disorders.  The paragraph A criteria require, subject to additional specific requirements, medically documented findings of generalized persistent anxiety, a persistent irrational fear, recurrent severe panic attacks, recurrent obsessions or compulsions, or recurrent and intrusive recollections of a traumatic experience.  Listing 12.06A.  The paragraph B criteria are the same as under Listing 12.04 for the mental

impairments at issue under Listing 12.06.  Listing 12.06B.  The paragraph C criteria require the complete inability to function outside the area of one's home as a result of a condition in paragraph A.  Listing 12.06C.  Listing 12.06 is met or equaled by satisfying the paragraph A and B criteria, or the paragraph A and C criteria.  Listing 12.06.

### C.      Analysis

The ALJ did not explicitly address the paragraph A or C criteria of either Listing 12.04 or 12.06.  Instead, she found that plaintiff did not meet or medically equal either listing for failure to satisfy the paragraph B criteria.  Plaintiff argues that the ALJ erred in her analysis of these criteria and that the ALJ should have found that he satisfied both listings.  The court finds no error.

The ALJ explained her reasoning concerning the paragraph B criteria for Listings 12.04 and 12.06 as follows:

> The first functional area is activities of daily living.  In this area, the claimant has no limitation.  The claimant's wife advised that he did not cook alone because it was not safe but he mowed their grass every two weeks.  He could drive a car and shopped twice per week (Ex. 4E).  At the hearing, she testified that she did not like to leave the claimant alone so he accompanied her to the flea market when she sold things.  He did not go to church as often as he used to and she drove the majority of the time when they went somewhere.  Yet, during the prior hearing in this matter, the claimant's wife testified that the claimant enjoyed visiting relatives and that he mowed their grass, took out the trash, cleaned their cars, and performed household chores.  In addition, during his psychological consultative examination [by Ms. Jamison], the claimant admitted that he did household chores and drove (Ex. 7F).  The claimant just renewed his CDL with the intention of using it to help his wife transport the bras that she sells at flea markets.

> The next functional area is social functioning.  In this area, the claimant has mild limitation.  He testified that he did not enjoy socializing with others and he had crying spells.  Yet, he could function around the public and grocery shopped with his wife.  During a prior hearing, the claimant's wife indicated that the claimant visited relatives and friends on an ongoing basis.  During the more recent hearing, his wife testified that he occasionally socialized while at the flea market but mostly sat in the van. During his psychological consultative examination [by Ms. Jamison], the claimant complained of social withdrawal.  However, following the

mental status exam, Ms. Jamison opined that he could adequately relate to co-workers and supervisors (Ex. 7F). In October 2012, the claimant admitted to helping his wife's flea market sales several days per week. He also testified that he interacted with people at the flea market and that he helped out at church and attended social activities there (Ex. 22F).

The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitation. During the psychological consultative examination, the claimant complained of difficulty concentrating. Yet, Ms. Jamison noted that his attention span was adequate and he could recall 5/5 objects immediately and 3/5 after five minutes (Ex. 7F). During a face-to-face interview with a field office in January 2009, it was noted that the claimant did not exhibit any psychological or cognitive problems (Ex. 1E). In June 2012, the claimant admitted to doing well and that he had been spending time with his wife at flea markets, going to church, and helping with his grandchildren. He exhibited a calm mood and a bright affect with no hallucinations or delusions. His cognition was intact and he exhibited good judgment (Ex. 19F).

The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation, nor any of extended duration.

Tr. 33-34 ¶ 3.

Plaintiff argues that the ALJ's paragraph B analysis is erroneous because it is contradicted by Mrs. Coppage's testimony and the opinion of Dr. Hoeper, who found plaintiff to have extreme difficulties in maintaining social functioning and concentration, persistence, or pace. For the reasons previously discussed, the ALJ did not err in discounting Mrs. Coppage's testimony and the opinions of Dr. Hoeper. The ALJ's listing determination is supported by substantial evidence, including the evidence the ALJ cites, and based on proper legal standards. Plaintiff's challenge to it is accordingly meritless.

## VII. ALJ'S EVALUATION OF 2011 DECISION

The ALJ indicated that she accorded significant weight to the 2011 decision by Judge Hall. Plaintiff contends that the ALJ erred in doing so. The court disagrees.

## A.      Applicable Legal Standards

The ALJ is required to consider the findings contained in a prior final decision of the Commissioner in determining disability on a subsequent application involving an unadjudicated time period. *Albright v. Comm'r of the Soc. Security Admin.*, 174 F.3d 473, 477-78 (4th Cir. 1999) (explaining that the justification for this requirement was that "[t]o have held otherwise would have thwarted the legitimate expectations of claimants—and, indeed, society at large— that final agency adjudications should carry considerable weight"); *see also* Soc. Sec. Acquiescence Ruling 00-1(4), 2000 WL 43774, at *4 (12 Jan. 2000) (addressing weight to be given prior final decisions of the Commissioner).  An ALJ is "not bound to adopt those findings verbatim but must consider the prior findings and assign a weight to such findings."  *Manuel v. Colvin*, No. 1:11CV8, 2015 WL 519481, at *5 (M.D.N.C. 9 Feb. 2015) (citing *Albright*, 174 F.3d at 477-78).

Acquiescence Ruling 00-1(4) sets forth the following requirements for assessing the weight due a prior final decision:

> When adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

Soc. Sec. Acquiescence Ruling 00-1(4), 2000 WL 43774, at *4.

Case 4:14-cv-00211-D   Document 30   Filed 12/14/15   Page 27 of 36

### B.     Analysis

In her decision, the ALJ explained the weight she provided the 2011 decision as follows:

> Judge Hall found the claimant's depression to be non-severe, an opinion to which I afford great weight. Judge Hall observed that "He has not sought out treatment, even though he had access to care thru the VA. He is not under the care of a therapist, psychologist or psychiatrist. He is not taking psychotropic medication. The consultative psychologist found some evidence of a memory impairment; however this is inconsistent with the claimant's activities of daily living. He attends college via online computer. He has maintained his CDL license, last renewed in 2008. He manages family finances and he supports his wife who is an evangelist" (Exh. 7A).

> Also supporting Judge Hall's conclusion that the alleged mental impairment was non-severe, she pointed to the claimant's testimony of wide-ranging activities of daily living. The claimant testified in the prior hearing that he visited relatives and friends on an ongoing basis, enjoyed listening to gospel music, and he liked to support his wife's ministry as an evangelist. On a typical day he described [mowing] grass, taking out the trash, cleaning the car and van, and doing any household chores that his wife tells him to do. He was taking online college courses, maintains his CDL license, manages the family finances, and enjoys writing, cooking and walking (Exh. 7A). I agree with Judge Hall that this is not consistent with depression, and further find that they do not support PTSD or any alleged cognitive impairment either.

Tr. 28 ¶ 3.

Plaintiff contends that the ALJ should have given Judge Hall's findings less weight because he has submitted a significant amount of medical evidence postdating the 2011 decision and has received a substantial amount of treatment for his mental and other impairments since that decision. The ALJ, though, comprehensively reviewed the medical and other evidence postdating the 2011 decision. Plaintiff has not demonstrated that this evidence compels attribution of less weight to the 2011 decision than the ALJ gave it. While plaintiff did receive treatment after the 2011 decision, the ALJ properly found that it was not until after that decision that plaintiff sought treatment for his mental impairments. Moreover, with respect to plaintiff's

treating psychiatrist, Dr. Hoeper, the documentation in the record hardly shows that it was extensive. As discussed, there are notes for only two office visits.

Further undermining plaintiff's argument is the relatively modest period between the prior decision, issued 12 April 2011, and the instant decision, issued 26 June 2013, spanning about 26 months. The total period of disability plaintiff alleges is over 72 months, extending back to June 2007.

The court concludes that the ALJ's assessment of the 2011 decision is supported by substantial evidence, including the evidence the ALJ cites, and based on proper legal standards. The court accordingly rejects plaintiff's challenge to the assessment.

## VIII. ALJ'S EVALUATION OF VA RATING

On 4 September 2010, the VA issued a rating decision stating that "[e]valuation of prostate cancer (due to herbicide exposure), which is currently 100 percent disabling, is continued." Tr. 765. The ALJ gave the VA's rating "little weight." Tr. 37 ¶ 5. Plaintiff alleges that the ALJ erred by not giving greater weight to the VA's rating. The court finds no error.

### A. Applicable Legal Standards

Determinations by agencies other than the SSA regarding a claimant's disability are not binding on an ALJ, but must be considered. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6-7 (9 Aug. 2006) (citing 20 C.F.R. §§ 404.1504, 416.904 (other agencies' disability determinations not binding on SSA) and *id.* §§ 404.1512(b)(5), 416.962(b)(5) (other agencies' disability decisions are among evidence to be considered). The Fourth Circuit has ruled that "in making a disability determination the SSA must give substantial weight to a VA disability rating." *Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 343 (4th Cir. 2012). The court went on to qualify this principle:

[B]ecause the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.

*Id.*

As to the difference in standards, the VA regulations provide that "all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled." 38 C.F.R. § 4.16(b). In contrast, the Social Security regulations provide that a claimant is disabled if he is unable "to do any substantial gainful activity by reason of" any qualifying impairment. 20 C.F.R. §§ 404.1505(a), 416.905(a). Thus, step five of the Social Security sequential analysis focuses on whether there are jobs available to the claimant in the national economy, not on whether the claimant can secure a job. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), .1560(c)(2), .1566(a) (providing that work exists in the national economy under step five when it exists in significant numbers in either the region where the claimant lives or several other regions of the country, whether or not it exists in the immediate area in which the claimant lives, a specific job vacancy exists for the claimant, or the claimant would be hired if he applied for work); 416.920(a)(4)(v), .960(c)(2), .966(a) (same); *Dean v. Astrue*, No. C08-5112RJB-KLS, 2008 WL 4585328, at *5-8 (W.D. Wash. 14 Oct. 2008) (reviewing the above-noted and other differences between Social Security and VA disability standards).

### B. Analysis

Here, the ALJ explained her attribution of little weight to the 2010 VA rating as follows:

I note that the VA issued a disability rating for the claimant (Ex. 21F); however, I give this little weight. Regulations 20 CFR 404.1504 and 416.904 state that a determination of disability by another government agency is not binding on the

[SSA]. Furthermore, SSA uses more stringent standards for assessing disability. The VA determined the claimant was disabled in the past due to prostate cancer.

Tr. 37 ¶ 5.

Plaintiff contends that the ALJ should have attributed more weight to the VA disability rating because "the [VA] applies similar rules as the [SSA] when determining disability." (Pl.'s Mem. 23). Of course, the differences in the standards used by the VA are significant and can justify the attribution of less weight to a VA's decision, as the Fourth Circuit recognized in *Bird* and the ALJ held in her decision.

The court concludes that the ALJ's assessment of the 2010 VA rating was proper. It accordingly rejects plaintiff's challenge to it.

## IX. ALJ'S RFC DETERMINATION

Plaintiff contends that the ALJ erred in her assessment of his RFC based on her purportedly erroneous attribution of insufficient weight to Mrs. Coppage's hearing testimony and the opinions of Dr. Hoeper and Dr. Sansbury, and excessive weight to plaintiff's maintenance of his CDL. For the reasons previously discussed, these challenges are meritless.

Another factor in the ALJ's RFC analysis not mentioned by plaintiff was the ALJ's assessment of plaintiff's credibility. She stated in part:

Perhaps it's not surprising then [in light of the 2011 decision] that the claimant's description of mental symptoms at the present hearing has changed dramatically since Judge Hall decided he was not disabled. At the present hearing, he reported having "constant" flashbacks from his year working as a field clerk handling office duties and paperwork in Vietnam. He alleged that he decided he needed treatment for PTSD in 1996, yet this is contradicted by the objective records. It's also contradicted by Judge Hall's observation that he made no attempt to seek out medical treatment even though he had access to care thru the VA, was not taking psychotropic medication, and was not under the care of a therapist, psychologist or psychiatrist (Exh. 7A).

The claimant then alleged at the present hearing that his PTSD symptoms worsened in 2007 when he quit working "because he had more time to think about

things." Again though, he didn't seek out any treatment despite having access to care thru the VA. He contended that he can only sleep 4 hours a night because of sleep apnea and his enlarged prostate. However, upon prompting by his representative, he then changed his testimony and contended that it was the "constant flashbacks" that prevent him from sleeping. Even if his sleep apnea was causing him difficulty sleeping, the medical records reflect that he fails to wear his CPAP consistently.

The claimant then contended, in discussing his allegedly severe depression and PTSD, that he seldom socializes with people. This is inconsistent with his testimony at the prior hearing and his statements to his own treating provider less than 6 months ago, **wherein he reported "I've been great" and said "He spends his time helping his wife with her flea market sales several days each week .... Vet and his wife continue to stay busy with flea markets, church, and helping with grandchildren"** (Exh. 19F, dated October 2, 2012).

When I pointed this out to the claimant, he responded: "the people that I socialize with don't like to speak the language that I speak. A lot of people that I come in contact with are not church affiliated." He admitted that he helps his wife out with her flea market business, but attempted to minimize his involvement, stating that it's only for three days a week and 4-5 hours at a time. Even assuming this is true, he's in a social atmosphere of a busy flea market for 15 hours a week, and then conceded that he and his wife do talk to quite a few people. The allegation that he "seldom socializes with people" is not credible.

I also explored this allegation of "seldom socializing" by asking about the social activities he's involved with at church, since the evidence shows he "credits his religious faith and supportive wife with his doing so well" (Exh. 19F) and "supports his wife, who is an evangelist" (Exh. 7A).

The claimant testified that he serves as an usher in church, has been asked to be a Deacon, and has sung in the choir. He told us that he goes to prayer meetings on Wednesday nights and that between 15-25 people are there. He further told us about his 11 grandchildren ranging from age 4 to 16 that live within driving distance, in Rocky Mount, NC. He told his doctor that he . . . "**continues to stay busy with flea markets, church, and helping with grandchildren**" (Exh. 19F). Remember though, he contended less than 15 minutes earlier in the hearing that he "seldom socializes with people."

He testified that he goes to church in [Chocowinity] to sell the bras that his wife markets. As the claimant told us, "That's another reason why I'd like to keep my CDL [active], because you never know when we might need a vehicle for her to transport large amounts of bras" (Hearing Testimony). The claimant's ability to rationalize why he chose to get a CDL renewed instead of getting a regular driver's license also weighs against finding him to have a cognitive disorder: **"Because if they pull me off a seizure medication and my wife and I decide**

**we want to someday get a SUV or a camper that requires a CDL, <u>then I won't have to go thru the process of acquiring another CDL"</u>** (Hearing Testimony). This explanation also makes me question the alleged severity of his seizures.

Tr. 29-30 ¶ 3 (bolding and underlining original).

This and the other grounds cited by the ALJ for her RFC determination are supported by substantial evidence and based on proper legal standards. The court accordingly rejects plaintiff's challenge to it.

## X. ALJ'S HYPOTHETICAL TO VE

As noted, the ALJ relied on testimony from the VE in finding that plaintiff could perform his past work as an inventory control clerk and, alternatively, that there were jobs in significant numbers in the national economy that plaintiff could perform, including jobs in the occupations of linen room attendant, marker, and surveillance system monitor. *See* Tr. 37 ¶ 6; 38 ¶ 6. Plaintiff contends that the ALJ's reliance on this testimony was erroneous because it was based on a hypothetical that did not include all of plaintiff's limitations. The court finds no error.

A hypothetical question to a VE is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005). The ALJ's hypothetical here adequately tracks her RFC determination.

The ALJ asked the VE to

assume an individual of the claimant's age, education, and work experience, who is able to perform the full range of exertional work. This individual should never climb ladders. They should avoid concentrated exposure to unprotected heights.

Tr. 83. The VE responded that a person with this RFC could perform plaintiff's past relevant work and other jobs set out above. Tr. 83-84. The VE testified that the hypothetical person would remain able to perform these jobs if the additional restriction were added that the person

not drive, specifically, that he "avoid all exposure to private vehicles."[9] Tr. 84. With the no-driving restriction added, the hypothetical posed to the VE conformed to the RFC the ALJ determined plaintiff to have. *See* Tr. 34 ¶ 5. For the reasons previously discussed, the ALJ's RFC determination was proper. Plaintiff's challenge to the ALJ's hypothetical to the VE therefore fails.

## XI.     PLAINTIFF'S MOTION FOR REMAND

On 10 August 2015, during the pendency of this appeal, the VA issued a letter to plaintiff regarding his veterans disability benefits (D.E. 27-1). Plaintiff argues that this letter constitutes new evidence requiring remand of this case pursuant to sentence six of 42 U.S.C. § 405(g) ("sentence six"). The court disagrees.

### A.     Applicable Legal Standards

Sentence six addresses evidence submitted for the first time to the court. It provides for remand "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see Stanley v. Colvin*, No. 7:12-CV-134-FL, 2013 WL 2447850, at *7 (E.D.N.C. 5 Jun. 2013); *Edwards v. Astrue*, No. 7:07CV48, 2008 WL 474128, at *8 (W.D. Va. 20 Feb. 2008). There are accordingly three distinct requirements under sentence six.

First, the evidence must be new. "Evidence is deemed new if it is not duplicative or cumulative of evidence already in the record." *Wilkins*, 953 F.2d at 96; *Stanley*, 2013 WL 2447850, at *7. Second, the evidence must be material. Evidence is material if there is a reasonable possibility that it would have changed the outcome. *Wilkins*, 953 F.2d at 96. Third, there must be good cause for failing to submit the evidence earlier. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985). The burden of showing that the requirements of sentence six are met

---

[9] "Private vehicles" presumably refers to vehicles other than those used for public transportation.

rests with the claimant. *See Fagg v. Chater*, No. 95-2097, 1997 WL 39146, at *2 (4th Cir. 3 Feb. 1997); *Keith v. Astrue*, No. 4:11CV0037, 2012 WL 2425658, at *2 (W.D. Va. 22 Jun. 2012) ("The burden of demonstrating that all of the Sentence Six requirements have been met rests with the plaintiff."), *rep. & recomm. adopted by* 2012 WL 4458649 (9 Aug. 2012).

### B.    Analysis

It is apparent that the VA's 2005 letter is neither new nor material. The letter states that it is merely "a summary of benefits you currently receive from the [VA]." (8 Aug. 2015 VA Ltr. 1). It therefore does not purport to convey any new information.

The letter indicates that plaintiff's combined service-connected evaluation is 100% disabled. (*Id.*). The record, of course, already contained a decision from the VA, the 4 September 2010 rating, that plaintiff was 100% disabled (Tr. 765), which the ALJ expressly addressed in her decision (Tr. 37 ¶ 5).

The court concludes that the VA's 10 August 2015 letter is cumulative of evidence already in the record and could not reasonably be expected to change the outcome of the case. Plaintiff's motion to remand under sentence six should accordingly be denied.

## XII.   CONCLUSION

After careful consideration of the Commissioner's final decision, the other portions of the record in this case (as supplemented), and the applicable law, the court concludes that the decision is supported by substantial evidence of record and based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 23) for judgment on the pleadings be ALLOWED; plaintiff's motion (D.E. 18) for judgment on the pleadings be DENIED; plaintiff's motion (D.E. 26) for remand be DENIED; and the final decision of the Commissioner be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 31 December 2015 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after the filing of objections.

This 14th day of December 2015.

James E. Gates
United States Magistrate Judge